STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeremy D. SCHLADWEILER, Defendant-Appellant.

Court of Appeals

*No. 2008AP3119–CR. Submitted on briefs September 24, 2009. —Decided November 11, 2009.*

2009 WI App 177

(Also reported in 777 N.W.2d 114.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeremy Schladweiler*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Eileen W. Pray*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Neubauer, P.J., Anderson and Snyder, JJ.

¶ 1. NEUBAUER, P.J. Jeremy Schladweiler appeals from a postconviction order denying his motion for sentence modification. Schladweiler contends that he is entitled to resentencing based on a "new factor," namely that the department of corrections (DOC) denied him placement in the Challenge Incarceration Program (CIP) despite the trial court's determination at sentencing that Schladweiler was eligible for the program. The trial court's statutorily required CIP eligibility determination at sentencing is but one criteria considered by the DOC, *see* WIS. STAT. §§ 973.01(3m) and 302.045(2) (2007–08),[1] and the DOC's subsequent denial of an inmate's placement in the program does not

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted. Schladweiler was charged, convicted, and sentenced in 2000. Because the relevant

644

constitute a new factor for purposes of sentence modi-
fication. We affirm the trial court's ruling.

## BACKGROUND

¶ 2.    Schladweiler pled guilty to armed robbery
and was convicted on August 8, 2000. The judgment of
conviction reflects a total sentence length of twenty
years, with thirteen years' imprisonment followed by
seven years' extended supervision.[2] The written expla-
nation of the determinate sentence imposed by the trial
court sets forth the terms of confinement and supervi-
sion, and includes a box stating:    "You [are/are not]
eligible for the Challenge Incarceration Program ('Boot
Camp')." Schladweiler's form indicates that he is eligible
for the program.

¶ 3.    On February 7, 2008, Schladweiler filed a
postconviction motion to amend his sentence on the
grounds that the trial court found he was eligible for the
CIP, but the program review committee for the DOC
later informed him that he would not be eligible for the
CIP until 2012, at which time he would exceed the age
limit for the program.[3] The State opposed Schladweiler's
motion, arguing that Schladweiler failed to demon-
strate the existence of a new factor requiring sentence

statutes remain largely unchanged for purposes of the issue on
appeal, we will refer to the current version of the statutes,
unless otherwise noted.

   [2] Schladweiler was also convicted of possession of THC, as a
repeater. He has already served his three-year sentence, which
ran concurrent to his sentence for the armed robbery convic-
tion.

   [3] We note that at the time of Schladweiler's sentencing, the
CIP eligibility requirements required an inmate to be under
thirty years old. *See* WIS. STAT. § 302.045(2)(b) (1999–2000).
However, it was later amended to allow entry to inmates under

modification or an erroneous exercise of discretion in the imposition of the original sentence. On February 12, 2008, the trial court, by the same judge who imposed Schladweiler's sentence, denied Schladweiler's motion without a hearing, stating: "The court determines *eligibility* for CIP only—it is for [the DOC] to exercise discretion as to who gets into [the] program and when . . . . [The court] cannot order that you be placed into the program."

¶ 4.    Schladweiler then filed a motion for sentence modification and to amend the judgment of conviction to reflect a reduced confinement term of eleven years with nine years' extended supervision or to otherwise "fashion a sentence structure appropriate for CIP eligibility." Schladweiler argued that "[d]uring sentencing the Honorable James L. Carlson intended for the de-

forty years old for those inmates sentenced on or after July 26, 2003. *See* Wis. Stat. § 302.045(2)(b); 2003 Wis. Act 33, § 2504.

The DOC's explanation of Schladweiler's eligibility is set forth in correspondence to Schladweiler dated July 3, 2006, stating:

> Your Judgment of Conviction states you are eligible for CIP participation. Capt. Grady . . . has indicated you are eligible for CIP participation after May of 2007. Part of the criteria for CIP participation is that you be minimum suitable. Your current risk rating scores are high in sentence structure, reducing to moderate in May, 2009, and low in March, 2012. Also, your Truth in Sentencing date is September 28, 2013. Based on these dates, it is premature to consider placement in CIP at this time.

Therefore, Schladweiler points to various administrative code provisions relating to program and treatment assignments and contends that, because of the nature of his offense and the length of his sentence, by the time he reaches a low risk rating, he will be over thirty years old and unable to meet that eligibility criterion. *See* Wis. Stat. § 302.045(2)(b) (1999–2000); *see also* Wis. Admin. Code §§ DOC 302.07 and 302.10.

fendant to be eligible for CIP" and that the "eligibility has been thwarted by the promulgation of new policies contemporaneous or subsequent to the original imposition of sentence." Therefore, Schladweiler argued the existence of a new factor frustrating the purpose of the trial court's sentence. Again, the State opposed Schladweiler's motion and the trial court, again Judge Carlson presiding, denied it without a hearing based on its determination that "the fact that the DOC has not afforded you [the] opportunity [for the CIP] does not frustrate a key component of the court's sentence. This is clear from a review of the sentencing transcript." Schladweiler appeals.

## DISCUSSION

¶ 5.   Schladweiler renews his argument for sentence modification on appeal. Schladweiler contends that the DOC's denial of his request for placement in the CIP constitutes a new factor because the sentencing court expressly intended him to be "eligible" for participation within the terms of his confinement. He posits that the court would have structured his sentence differently had it known that his sentence, combined with his offense and age, would render him ineligible under the DOC's CIP placement criteria.[4]

¶ 6.   The issue is whether the DOC's determination that an inmate does not meet the CIP placement

[4] Schladweiler contends that the postsentence promulgation of administrative rules relating to the DOC's inmate classification, assessment and evaluation, and program review served to "constrict[] and/or restrict[] eligibility and placement" into the CIP. *See* 553 Wis. Admin. Reg. 27 (Jan. 31, 2002) (noting the adoption of CR 00–140, effective Feb. 1, 2002). This aspect of Schladweiler's argument is subsumed by our later discussion of the respective roles of the trial court and the DOC.

criteria constitutes a new factor for purposes of sentence modification when a trial court has determined at sentencing that the defendant is eligible to participate in the program. We conclude that the DOC's denial of placement in the program does not constitute a new factor.

*Applicable Law and Standard of Review*

¶ 7.   Sentence modification involves a two-step process. *State v. Franklin*, 148 Wis. 2d 1, 8, 434 N.W.2d 609 (1989). First, a defendant must show the existence of a new factor thought to justify the motion to modify sentence. *Id.* If the defendant has demonstrated the existence of a new factor, the trial court must then decide whether the new factor warrants sentence modification. *Id.* A new factor is a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or it was in existence, but it was unknowingly overlooked by all of the parties. *State v. Ralph*, 156 Wis. 2d 433, 436, 456 N.W.2d 657 (Ct. App. 1990). In addition, the information or development must "frustrate[] the purpose of the original sentencing." *See State v. Johnson*, 158 Wis. 2d 458, 466, 463 N.W.2d 352 (Ct. App. 1990) (citation omitted). Finally, the defendant must establish the existence of a new factor by clear and convincing evidence. *State v. Michels*, 150 Wis. 2d 94, 97, 441 N.W.2d 278 (Ct. App. 1989). Whether a new factor exists is a question of law which we review de novo. *Johnson*, 158 Wis. 2d at 466.

*Statutory Overview*

¶ 8.   The Challenge Incarceration Program, upon successful completion, permits an inmate serving a bifurcated sentence to convert his or her remaining

648

initial confinement time to extended supervision time. *See* Wis. Stat. §§ 302.045(3m)(b)1. & 302.05(3)(c)2.a. The total length of the sentence remains unchanged. *See* §§ 302.045(3m)(b)2. & 302.05(3)(c)2.b.

¶ 9.   Commonly referred to as "boot camp," the CIP is governed by Wis. Stat. § 302.045, which provides that "the [DOC] shall provide a challenge incarceration program for inmates selected to participate" after meeting the eligibility requirements for the program. Sec. 302.045(1). The eligibility requirements at the time of Schladweiler's sentencing, set forth in subsec. (2), include that the inmate has volunteered for the program, is not yet thirty years old, is incarcerated for a qualifying offense, has been assessed and evaluated for substance abuse problems and for participation both physically and psychologically by the DOC, and has been deemed eligible for the program by the sentencing court. *See* § 302.045 (1999–2000). To that end, Wis. Stat. § 973.01(3m) provides that when imposing a bifurcated sentence, the court "shall, as part of the exercise of its sentencing discretion, decide whether the person being sentenced is eligible or ineligible for the challenge incarceration program under [§] 302.045 during the term of confinement in prison portion of the bifurcated sentence."

¶ 10.   Once the trial court has made an eligibility determination, the final placement determination is made by the DOC—the statute provides that, if an inmate meets all of the program eligibility criteria, the DOC "may" place that inmate in the program. Wis. Stat. § 302.045(2). Contrary to Schladweiler's contention, it is not the sentencing court's function to classify an inmate to a particular institution or program; this authority lies solely with the DOC. *See State v. Lynch,*

649

105 Wis. 2d 164, 168, 312 N.W.2d 871 (Ct. App. 1981) (Once a prison term is selected, the trial court may not order specific treatment; control over the care of prisoners is vested by statute in the overseeing department.). Thus, even when a sentencing court decides that a defendant is eligible for the CIP, the final placement decision is vested with the DOC.

### The DOC's Denial of Placement in the CIP is Not a New Factor.

¶ 11. Here, the trial court determined that Schladweiler was eligible for the CIP. At the sentencing hearing, the court stated:

> You are eligible for the Challenge Incarceration Program, boot camp. If you are placed in and successfully complete the Challenge Incarceration Program as determined by the department, the Court shall modify your sentence in the following manner. One, you will be released to extended supervision within 30 days after the Court is notified that you have successfully completed the program. Two, the unserved confinement portion of your sentence will be added to the extended supervision portion of your sentence. The total length of your sentence does not change.

The sentencing court expressly indicated that participation in the CIP is a possibility to be ultimately determined by the department, explaining to Schladweiler the sentencing modifications that would take place "*if* you are placed in . . . the [CIP] *as determined by the department.*" (Emphasis added.) Based on these statements and the statutory framework which provides the DOC with the final word on his eligibility, Schladweiler simply cannot establish that the DOC's

650

potential denial of placement was a fact not known to the trial court at the time of sentencing.

¶ 12. The record demonstrates that not only was it anticipated by the trial court that the department would make the ultimate decision as to Schladweiler's participation in the CIP, but that the trial court's sentence was not premised upon any expectation that Schladweiler would be permitted to do so. In other words, the DOC's denial of placement does not frustrate the purpose of the original sentence. At sentencing, the trial court noted that the offense of armed robbery carried a maximum penalty of incarceration and extended supervision not to exceed sixty years. The trial court observed that the nature of the offense was "[v]ery serious." The court noted the "negative" fact that Schladweiler had not availed himself of counseling and that his need for rehabilitative control is "high." Acknowledging the statements made by the victim and Schladweiler's family, the sentencing court noted that Schladweiler is a "conflicted type of person" but, at that point in time, a person the sentencing court would "consider to be certainly . . . dangerous to the public and one that needs to be confined."

¶ 13. In fashioning Schladweiler's sentence, the court noted that "he does have some redeeming factors," and opted for the "lower range recommended by the probation department," which was between thirteen to twenty-six years' incarceration with extended supervision of six to thirteen years. The court explained that the sentence provided for "the least custody or confinement consistent with public safety and with not deterring [sic] the serious nature of the offense." The court's comments with respect to the CIP program were made as part of its statutory obligation to provide a written and oral explanation of the sentence imposed, *see* WIS.

STAT. § 973.01(8), including an explanation of the impact of a CIP eligibility determination on the length of the sentence, *id.* at para. (am).

¶ 14.  In sum, there is nothing in the court's explanation that in any way indicates that its sentencing decision was premised upon Schladweiler's acceptance into the CIP. We therefore conclude that Schladweiler has failed to demonstrate that his inability to meet the CIP placement criteria frustrated the purpose of the trial court's sentence. *See Johnson,* 158 Wis. 2d at 466.

## CONCLUSION

¶ 15.  We conclude that Schladweiler has failed to establish the existence of a new factor for purposes of sentence modification.[5] The sentencing court's statutorily required eligibility determination is just one of the criteria to be considered by the DOC prior to the DOC's final determination whether or not to place an inmate in the CIP. *See* WIS. STAT. § 302.045(2). The DOC's subsequent denial of placement is not a new factor for purposes of sentence modification. Further, Schladweiler has failed to demonstrate that the denial of placement into the CIP frustrated the purpose of the trial court's sentence. We affirm the trial court's postconviction order denying Schladweiler's motion for sentence modification.

*By the Court.*—Order affirmed.

[5] In the alternative, Schladweiler requests this court to issue a directive to the DOC to permit Schladweiler's participation in the program. However, as discussed in the body of this opinion, it is for the DOC, not the courts, to determine program placement within the correctional institutions. *See State v. Lynch,* 105 Wis. 2d 164, 168, 312 N.W.2d 871 (Ct. App. 1981).